UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:17-cr-00164-2 |
| | ) | CHIEF JUDGE CRENSHAW |
| ANABELY CACERAS, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Sever filed by Defendant Anabely Caceres (Doc. No. 54) and the Government's response (Doc. No. 56). Co-Defendant Gerson Serrano-Ramirez has also filed a response. (Doc. No. 57.) The motion will be denied.

I.  Background

On November 16, 2017, a grand jury returned a Superseding Indictment against Caceres and Serrano-Ramirez. (Doc. No. 29.) Serrano-Ramirez is charged with nine counts, including possession of weapons and ammunition, illegal re-entry into the United States, tampering with a witness, distribution of cocaine, brandishing a firearm in relation to a crime of violence and drug trafficking, possession of a firearm in furtherance of a drug trafficking crime, and maintaining a drug-involved residence. (Id.) Caceres is charged with one count of being an illegal alien in possession of a firearm. (Id.)

These charges arise from an investigation and raid of Serrano-Ramirez's residence on August 8, 2017. When federal agents searched the residence pursuant to a warrant, they found, among other things, drugs, weapons including an AK-47 rifle, ammunition, digital scales, a bullet-proof vest, and five cell phones. Caceres was transported to a Department of Homeland Security

office and given a bond. On one of the recovered cell phones the Government found a video of Serrano-Ramirez holding the AK-47 and three pictures of Caceres posing with the AK-47. Several months later, after initial denials of knowledge as to firearms at Serrano-Ramirez's residence, federal agents showed Caceres the three pictures of her with the AK-47. Caceres conceded that the three images were of her, and stated that Serrano-Ramirez had wanted her to pose with the firearm so that she would look like a character in a "telenovela," a stylized form of television soap opera popular in many parts of the world.[1]

Caceres argues that severance is necessary because she will assert a "duress" defense at trial. Specifically, Caceres represents that her defense will hinge on allegations that Serrano-Ramirez was verbally, emotionally, and physically abusive to her (including punching, choking, and threatening with a knife). (Doc. No. 54 at 2.) Caceres states that she will testify that, on the day the three photographs were taken, Serrano-Ramirez became enraged when Caceres told him that he had impregnated her, and Serrano-Ramirez threatened Caceres with physical violence. (Id.) According to Caceres, Serrano-Ramirez was very angry and wanted Caceres to pose for the photos, and Caceres feared serious harm if she did not comply. (Id. at 2-3.) Critically, Caceres contends that:

> For Ms. Caceres to have a fair trial, she needs to testify about the physical, emotional and psychological abuse she suffered at the hands of Mr. Serrano-Ramirez, and about why she was afraid to say "no" to Mr. Serrano-Ramirez when he wanted her to pose with his AK-47 firearm. She would not be able to testify about these things if Mr. Serrano-Ramirez was a co-defendant at her trial *because it would prejudice the jury against him in regards to his criminal charges.*

---

[1] Caceres suggests that Serrano-Ramirez wanted her to look like a character in a telenovela such as "La Reina del Sur." (Doc. No. 54 at 2.) This Spanish-language telenovela was based on a novel of the same name by Spanish author Arturo Pérez-Reverte. It depicted the rise of a young woman from Mexico who became the most powerful drug trafficker in southern Spain.

(Id. at 3 (emphasis added).)

II.     Relevant Law

Federal Rule of Criminal Procedure 8(b) governs the joinder of defendants: "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). The general rule is that persons jointly indicted should be tried together because "there is almost always common evidence against the joined defendants that allows for the economy of a single trial." United States v. Lopez, 309 F.3d 966, 971 (6th Cir. 2002) (quoting United States v. Phibbs, 999 F.2d 1053, 1067 (6th Cir. 1993)); United States v. Driver, 535 F.3d 424, 427 (6th Cir. 2008) (citation omitted) ("As a general rule, persons jointly indicted should be tried together."). The Court looks "to the allegations in the indictment to determine whether joinder was proper." United States v. Lewis, 363 F. App'x 382, 390 (6th Cir. 2010) (citing Schaffer v. United States, 362 U.S. 511, 513-14 (1960)).

Even if joinder is proper under Rule 8, a severance may still be ordered under Federal Rule of Criminal Procedure 14, which provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Whether to grant a severance under Rule 14 lies in the sound discretion of the Court, and abuse occurs only where there is a "strong showing of prejudice," that is, "that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Tran, 433 F.3d 472, 478 (6th Cir. 2006) (citing Zafiro v. United States, 506 U.S. 534, 539 (1993)). Typically, a

3

defendant needs to show prejudice to his or her own case in arguing for severance under Rule 14. United States v. Gibbs, 182 F.3d 408, 434 (6th Cir. 1999).

III.  Discussion

The Court finds no misjoinder in this case, particular since Rule 8(b) is to be broadly construed in favor of initial joinder. See United States v. Moreno, 933 F.2d 362, 370 (6th Cir. 1991) (citation omitted) (stating that "Rule 8(b) 'can and should be broadly construed in favor of initial joinder,' because of the protection Rule 14 affords against unnecessarily prejudicial joinder"); see also Gibbs, 182 F.3d at 434 (noting that courts presume that juries "are capable of sorting out facts relevant to each individual defendant's case"). From the facts alleged on the face of the Superseding Indictment, there are clear connections between Caceres and Serrano-Ramirez and the alleged crimes, so as to satisfy Rule 8. Namely, Caceres's charge of possession of the AK-47 (Count 1) is specifically linked to Serrano-Ramirez's charges of possession of the same AK-47 (Count 1) and its use in furtherance of a drug trafficking crime (Count 7). And, as for the nature of Caceres's and Serrano-Ramirez's offenses, there is nothing untoward in joining gun and drug charges, because guns are "tools of the trade in drug transactions." United States v. Hardin, 248 F.3d 489, 499 (6th Cir. 2001) (collecting cases).

The conclusion that joinder of defendants was proper, however, does not end the inquiry. The Court also considers, under Rule 14, whether Caceres has made a strong showing of prejudice or whether the jury would be prevented from making a reliable judgment about her guilt or innocence. However, the only argument Caceres has made in her motion is that her "duress" defense would cause prejudice to Serrano-Ramirez, not to her. Caceres has not made any showing that *she* would be prejudiced by testifying in front of Serrano-Ramirez, nor that any trial right of *hers* would be negatively implicated, or the jury would not be able to fairly evaluate *her* defense

4

if Serrano-Ramirez was present. Just because Caceres's testimony may inculpate a co-defendant is not unique in criminal trials and does not alone justify severance. See, e.g., Zafiro, 506 U.S. at 540-41 (affirming refusal to sever where defendants argued they were prejudiced by the fact that the nature of their defenses inculpated each other); United States v. Vinson, 606 F.2d 149, 154 (6th Cir. 1979) (holding that "the mere fact that co-defendants attempt to blame each other does not compel severance"). Caceres has simply not met *her* burden on a motion to sever by claiming potential harm to her co-defendant.

Serrano-Ramirez has filed a response in which he "supports the motion."[2] (Doc. No. 57.) Serrano-Ramirez asserts that Caceres's potential duress defense would "undermine his right to a fair and impartial jury." (Id. at 1.) The Court does not agree. First, as discussed above, that co-defendants may accuse each other of crimes is not, in and of itself, prejudice serious enough to justify severance. Second, the Federal Rules of Evidence provide protection for Serrano-Ramirez against the use of other wrongs he may have committed, but are not the subject of the indictment, to convict him of the crimes for which he is being tried. See Fed. R. Evid. 404. To the extent such "character" evidence might be necessary for Caceres's "duress" defense, that evidence would likely be unavailable for use by the prosecution against Serrano-Ramirez for the crimes in the Superseding Indictment. Moreover, if there was any concern that serious prejudice to Serrano-Ramirez might develop, the Court would utilize limiting instructions upon the testimony of Caceres and any other supporting witnesses concerning "other wrongs" of Serrano-Ramirez that constituted the alleged "duress." See Driver, 535 F.3d at 427 ("Even where the risk of prejudice is high, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); Zafiro, 506 U.S. at 540 ("[E]ven if there were some risk of prejudice, here it is of the

---

[2] Although Serrano-Ramirez, for his part, has not brought a motion his own motion to sever.

type that can be cured with proper instructions, and juries are presumed to follow their instructions."); Gibbs, 182 F.3d at 434 (affirming denial of severance and noting use of "a number of cautionary statements in [the] instructions to the jury to reduce the possibility of prejudice with respect to a joint trial").[3]

IV.  Conclusion

In the end, the Court believes that the jury will be able to "properly compartmentalize the evidence" as it relates to Caceres in particular and both co-defendants generally, Driver, 535 F.3d at 427, and "mak[e] a reliable judgment about guilt or innocence," Zafiro, 506 U.S. at 539. For these reasons, and because a joint trial will not jeopardize a just verdict, Caceres's Motion to Sever (Doc. No. 54) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Serrano-Ramirez has offered no precedent for his contention that limiting instructions are "wholly inadequate" where one defendant states that she acted under the duress of another.